## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

UNITED STATES OF AMERICA,

v.                                                    CASE NO.: 4:19-cr-183

REGINALD ANDERSON,

Defendant.

## O R D E R

This matter is before the Court on Defendant's Motion for New Trial.  (Doc. 109.)  The Government has responded in opposition to Defendant's Motion.  (Doc. 110.)  For the reasons stated below, the Court **DENIES** Defendant's Motion.

### BACKGROUND

On November 7, 2019, Defendant was charged by Indictment with three counts of Distribution of a Controlled Substance, Methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 1.)   Counts One and Two of the Indictment alleged that Defendant distributed methamphetamine on two separate occasions on June 5, 2018, and Count Three alleged that Defendant distributed methamphetamine on one occasion on June 12, 2018.  (Id.)  After three days of trial, the jury found Defendant guilty of all three counts of the Indictment.  (Docs. 99–101, 106.)

During the trial, the Government presented evidence that Defendant distributed methamphetamine on the dates and times alleged in the Indictment to Elizabeth Monas, who was working as a confidential informant to the Drug Enforcement Administration ("DEA").  This evidence included testimony from multiple witnesses, physical evidence, audio and video recordings, and photographs.  (See docs. 123–24.)  In his Motion for a new trial, Defendant

contends that the jury heard improper testimony from two of the Government's witnesses: Robert Livingston, a DEA task force officer, and Daniel Williams, a confidential informant to the DEA.[1] Defendant contends these two witnesses presented "impermissible evidence of additional incidents of alleged illegal drug distribution, both attributed to [Defendant] and unrelated to the allegations [in the Indictment]." (Doc. 109, pp. 1–2.) Defendant claims that this testimony, combined with the Government's counsel's statement in closing argument that Defendant was a "drug dealer," "essentially told [the jury] that [Defendant] was responsible for more incidents of drug distribution outside of the three (3) specific indicted incidents, thereby depriving [Defendant] of a fair trial in the above-styled matter." (Id. at p. 3.)

## DISCUSSION

"Under Federal Rule of Criminal Procedure 33(a), 'the court may vacate any judgment and grant a new trial if the interest of justice so requires.'" United States v. Pitts, No. 4:19-CR-12, 2019 WL 3408817, at *1 (S.D. Ga. July 26, 2019). "Recognized grounds for a new trial include circumstances where substantial and prejudicial evidentiary errors were committed at trial . . . ." United States v. Rothwell, No. 3:17CR112/MCR, 2018 WL 11251343, at *4 (N.D. Fla. June 18, 2018) (citing United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990)).

> When considering a motion for a new trial based on an alleged evidentiary error, the Court will only order a new trial where "a significant possibility exists that, considering the other evidence presented by both the prosecution and the defense, [the error] has a substantial impact upon the verdict of the jury." United States v. Riley, 434 F. App'x 818, 821 (11th Cir. 2011) (quoting United States v. Arbolaez, 450 F.3d 1283, 1290 (11th Cir. 2006)). But "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." Id.

---

[1] In his Motion, Defendant confuses Officer Livingston with another witness, DEA task force officer Gerry Lattimore. (See doc. 109, p. 2.) Having reviewed the Defendant's Motion and the transcript of Officer Livingston and Officer Lattimore's testimonies, the Court has determined that Defendant clearly intended to challenge the testimony of Officer Livingston, not Officer Lattimore. Thus, the Court analyzes Officer Livingston's testimony.

United States v. Scott, No. 4:17-CR-50, 2018 WL 5087237, at *4 (S.D. Ga. Oct. 18, 2018) (alteration in the original).  Defendant contends that Officer Livingston's and Mr. Williams' testimony that they each had dealings with Defendant outside of the three transactions alleged in the Indictment unfairly prejudiced him and therefore warrant relief under Rule 33.  (Doc. 109, pp. 2–3.)

Officer Livingston testified regarding his experience investigating drug trafficking activities generally, and he then detailed the DEA's investigation of Defendant that led to the charges in this case.  (Doc. 123, pp. 32–88.)  He described Ms. Monas's three controlled purchases of methamphetamine from Defendant with two transactions occurring on June 5, 2018, and the other on June 12, 2018.  (Id. at pp. 42–88.)  The conclusion of the Government's counsel's direct examination of Officer Livingston included the following exchange:

> Q. With respect to this investigation, aside from the three transactions that were had, the two on June the 5th and the one on June 12th, were there any further transactions with the defendant in this investigation?
>
> A. Um, there were with other – another informant.
>
> Q. But in this particular case involving the confidential informants, there were not?
>
> A. Correct.
>
> Q. This was the substance of your investigation in this case, sir; correct?
>
> A. Yes, sir.

(Id. at pp. 86–87.)  Defendant's counsel moved to strike Officer Livingston's testimony, and the Court granted that Motion and instructed the jury, "Members of the Jury, don't consider the

testimony regarding any other transactions other than the three that are at issue in this case." (Id. at p. 87.)

As for Mr. Williams, he testified that he has acted as a paid confidential informant to law enforcement agents for several years. (Id. at pp. 129–30.) He explained that he introduced the DEA agents with whom he had worked to Ms. Monas, who had a prior relationship with Defendant. (Id. at pp. 129, 131.) Mr. Williams testified that he did not think he had met Defendant prior to 2018, and that he had only known Defendant "since this case was open." (Id. at p. 130.) Mr. Williams helped develop the plan whereby Ms. Monas would make controlled purchases of methamphetamine from Defendant. (Id. at p. 131.) He stated that the plan ultimately resulted in Ms. Monas obtaining methamphetamine from Defendant on three separate occasions, with two occasions occurring on June 5, 2018, and the third occurring on June 12, 2018. (Id. at pp. 131–150.) Mr. Williams participated in each transaction by riding in the vehicle with Ms. Monas, but Mr. Williams had no direct interaction with Defendant during the three transactions. (Id.)

The Government's counsel's examination of Mr. Williams regarding the June 12, 2018 transaction included the following exchange,

> Q: And did you ultimately drive, again, for a transaction with the defendant on June the 12th?
>
> A. I'm sorry. Would you repeat the question[?]
>
> Q. Yeah. On June the 12th, the date of June the 12th, was there another transaction with the defendant coordinated [sic]?
>
> A. Yes.
>
> Q. Okay. And who was with you that day?
>
> A. I think I might be mixing the dates up here. I had another transaction with the same defendant in another case.
>
> Q. Okay. That's not what I'm referring to.

A. Okay.  Then I made a mistake.  I'm sorry.

(Id. at pp. 144–45.)  Defendant's counsel then requested a sidebar with the Court during which he made a motion for a mistrial.  (Id. at pp. 145–46.)  Counsel argued that Mr. Williams' testimony regarding "another transaction" violated Federal Rule of Evidence 404(b) because the testimony "directly implicates [Defendant] in [a] case [for which] he hasn't been charged."  (Id. at p. 145.)  Defendant's counsel also stated that he "had no prior notice of [the other transaction]," and that it was not being offered for any of Rule 404(b)'s permissible purposes.  (Id.)  He further contended that the combination of Mr. Williams' testimony with Officer Livingston's stricken testimony warranted a mistrial.  (Id. at p. 146.)   In response, counsel for the Government agreed that Mr. Williams' testimony could be stricken and that the Court could give a curative instruction but contended that the testimony was not "mistrial worthy" particularly given the lack of details in Mr. Williams' statement.  (Id. at pp. 146–47.)  The Court denied the motion for a mistrial and instead gave a curative instruction.  (Id. at pp. 147–48.)  The Court explained at sidebar,

> I'm going to deny the motion for a mistrial but give a curative instruction.  For one thing, this witness is testifying about his course of dealing with the defendant.  So I'm not certain that it would be unduly prejudicial even if I didn't give the curative instruction.  You know, we oftentimes hear people testify about their course of dealing with an individual.
>
> Additionally, I agree that the witness has not testified as to what the transaction was.  He just said he was confused.  He didn't state that it was a drug transaction. Of course, the reason I'm giving a curative instruction is there's a potential that the jury would infer that, but he just basically said I'm confused about it and something happened on another occasion.
>
> So[,] I don't think that we've gotten to that level with it.  And I will trust that the jury will follow my instruction on it.
>
> But let's tread carefully with this witness, [Government's counsel].  He's confused. He doesn't seem, to me, to remember the exact specifics of that date. So if he doesn't remember it, he doesn't remember it and you'll just have to get it in through

somebody else.

(Id. at p. 147.)  The Court then instructed the jury:

> Members of the Jury, you heard some testimony, I think, from the witness about
> some other dealings or some other testimony that doesn't have to do with this case.
> I think it was something said to the effect of some other transaction.  He didn't say
> what the transaction was.  I'm striking that testimony from the record.  You'll recall
> that I told you in your preliminary instructions there's times I have to strike
> testimony and you are not to consider it.  Do not consider that testimony at all in
> any way in this case at all.  Only consider this defendant's [sic] testimony about the
> transactions involved in this case.  Don't consider that testimony at all.  Okay.  Only
> consider the testimony about the transactions that are alleged in this case, nothing
> else.

(Id. at p. 148.)

After dismissing the jury for the day, the Court provided further support for its decision to

deny Defendant's motion for a mistrial.  (Id. at pp. 272–75.)  The Court recounted that both Officer

Livingston's and Mr. Williams' statements regarding other interactions with Defendant were

vague and inadvertent, that Government's counsel did not intentionally elicit the testimony, and

that the testimony was not highly prejudicial.  (Id.)  The Court explained that given these factors

and based on binding authority from the former United States Court of Appeals for the Fifth Circuit

and persuasive authority from the current Fifth Circuit, striking the testimony and instructing the

jury not to consider it was sufficient to cure any error caused by the testimony.  (Id. at pp. 273–75

(citing United States v. Harris, 205 F. App'x 230 (5th Cir. 2006); United States v. Smith, 517 F.2d

710 (5th Cir. 1975); United v. Troise, 483 F.2d 615 (5th Cir. 1973)).)[2]

Having reviewed Defendant's Motion for a New Trial, the Government's Response, and

the entirety of the trial transcript, the Court finds that Defendant has failed to point out error in his

trial, much less substantial error that resulted in the level of prejudice that would warrant the

---

[2] In Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted
as binding precedent all of the decisions of the former Fifth Circuit prior to October 1, 1981.

extraordinary remedy of a new trial.  To be sure, Officer Livingston's and Mr. Williams' stricken testimonies that they had interactions with Defendant outside of the three transactions charged in the Indictment risked running afoul of Federal Rule of Evidence 404(b).[3]  However, as the Court explained at trial, both Officer Livingston's and Mr. Williams' statements regarding their other interactions with Defendant were not responsive to the Government's counsel questions, and counsel did not intentionally elicit the statements.  Officer Livingston's testimony was given in response to a question that counsel made clear was to be limited to "this investigation," (doc. 123, p. 86), and Mr. Williams responded to a question from counsel about the transaction that occurred on "June 12," (id. at p. 144).  Moreover, it does not appear the Government's witnesses intentionally interjected this evidence, as both witnesses seemed genuinely confused or at a loss for memory when giving the testimony at issue.  See Harris, 205 F. App'x at 232 (no error in denying motion for mistrial based on officer's testimony regarding defendant's prior arrest, as "an inadvertent, non-responsive reference to a defendant's arrest is often not a basis for mistrial") (citing Leonard v. United States, 386 F.2d 423, 425 (5th Cir. 1967); United States v. Kidd, 446 F.2d 1385, 1386–87 (5th Cir. 1971)).

Most importantly, as to both Officer Livingston's and Mr. Williams' statements that they had other dealings with Defendant, the Court struck the testimony directly after it was given and instructed the jury not to consider it.  (Doc. 123, pp. 87, 148.)  See United States v. Melgen, 967

---

[3] Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).  In some instances, evidence of a defendant's unindicted drug trafficking activities can be offered for one of the purposes permitted by Rule 404(b).  See, e.g., United States v. Lampley, 68 F.3d 1296, 1299–1300 (11th Cir. 1995) (district court committed no error by allowing witness to testify regarding defendant's prior dealings with witness as evidence was relevant to issue of defendant's intent).  However, here, the Government did not seek to introduce evidence of other transactions for any of the permitted reasons and, regardless, the Government did not provide any notice of its intent to introduce such evidence as required by Local Rule 16.2.

F.3d 1250, 1262 (11th Cir. 2020) ("If the district court issued a curative instruction, this Court will reverse only if 'the evidence is so highly prejudicial as to be incurable.'") (quoting United States v. Dodd, 111 F.3d 867, 870 (11th Cir. 1997)); United States v. Funt, 896 F.2d 1288, 1295 (11th Cir. 1990) ("This court will not overturn a district court's refusal to grant a mistrial where curative instructions were given, 'unless the evidence is so highly prejudicial as to be incurable by the trial court's admonition.'") (quoting United States v. Tenorio–Angel, 756 F.2d 1505, 1512 (11th Cir. 1985)); Troise, 483 F.2d at 618 (noting that "[i]t has long been the settled rule in this Circuit that error in the admission of evidence under most circumstances may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it" and affirming conviction despite impermissible testimony where "[agent's] remark was inadvertent and not responsive to [a] question" and trial court had denied motion for mistrial but instructed jury not to consider impermissible testimony).  In addition to the above-quoted curative instructions given directly after the testimony, the Court instructed the jury at the beginning of the trial, "[s]ometimes I may order that evidence be stricken and that you disregard or ignore the evidence even if you've heard it or seen it.  That means when you are deciding the case you must not consider that evidence at all." (Doc. 123, p. 17.)  Additionally, during its final instructions, the Court explained that the jurors "must consider only the evidence that [the Court has] admitted in the case," (doc. 124, p. 45) and that they must follow all the Court's instructions even if they do not agree with them, (id. at p. 44).  The Court trusts that the jury followed these instructions.  See United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011) ("We presume that jurors follow the instructions given by the district court.").  The Court also cautioned the jury that "the defendant is on trial only for the specific crimes charged in the indictment.  You're here to determine from the evidence in this case whether the defendant is guilty or not guilty of those specific crimes."  (Doc. 124, p. 50.)  See

Harris, 205 F. App'x at 232 (noting that trial court had instructed the jury that "'[t]he defendant is

not on trial for any act, conduct, or offense not alleged in the indictment'" and explaining that

"[w]e have held that an erroneous admission of a prejudicial remark may be cured by just such a

general limiting instruction") (citing United States v. Paul, 142 F.3d 836, 844 (5th Cir. 1998)).

Moreover, Officer Livingston's and Mr. Williams' remarks could only have caused very

little, if any, prejudice to Defendant, and that prejudice was certainly curable by the Court's

striking the testimony and giving curative instructions.  Both statements at issue here were very

brief and vague, and the Eleventh Circuit has found curative instructions sufficient to remedy the

introduction of far more extensive and specific evidence.  See Funt, 896 F.2d at 1295–96 (the trial

court's striking of several days of impermissible testimony and directions to the jury to disregard

such testimony were sufficient to cure any prejudice).[4]  Moreover, the most that the jury could

have inferred from Officer Livingston's and Mr. Williams' stricken testimony is that Defendant

may have had other transactions with Mr. Williams and perhaps another confidential informant on

instances other than those alleged in the Indictment.  Curative instructions have been found

adequate to remove the prejudice from far more damning evidence.  See, e.g., Smith, 517 F.2d at

711 (affirming conviction despite hearsay statement of prosecution witness that defendant shot

someone where testimony was not responsive to counsel's question and court had instructed jury

not to consider testimony because "evidence withdrawn from the jury with a direction by the court

that it is to be disregarded may not be the basis of reversible error" except "where the remark is so

---

[4] In Funt, the Eleventh Circuit noted that it had previously upheld trial courts' denials of requests for mistrial "where the comments presented to the jury were spontaneous and singular." 896 F.2d at 1295 n. 5 (citing United States v. Ruz–Salazar, 764 F.2d 1433 (11th Cir.1985); United States v. Benz, 740 F.2d 903 (11th Cir. 1984)).  The court stated, "[h]ere, however, the stricken government testimony was much more extensive; nonetheless, we do not think that it rose to the level of requiring a mistrial."  Id.  In the case at hand, Officer Livingston's and Mr. Williams' statements were "spontaneous" and, particularly in comparison to the "much more extensive" testimony in Funt, did not rise "to the level of requiring mistrial." Id.

highly prejudicial as to be incurable by the trial court's admonition"). Any prejudice from Officer Livingston's and Mr. Williams' remarks is further diminished when viewed in the context of the totality of the independent evidence which included testimony from other witnesses, particularly Ms. Monas, regarding Defendant's direct participation in three controlled purchases as well as audio, video, and photographic evidence of the purchases. This evidence, unaffected by the errors Defendant alleges, was sufficient and supports the jury's verdict. See United States v. Grzybowicz, 747 F.3d 1296, 1311 (11th Cir. 2014) ("We have recognized that a trial judge is often 'in the best position to evaluate the prejudicial effect of a statement or evidence on the jury,' and that the prejudicial effects of an improper statement may be reduced or eliminated where 'the record contains sufficient independent evidence of guilt.'") (quoting United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007)). In sum, the Court finds that any prejudice from Officer Livingston's and Mr. Williams' stricken testimony did not rise to a level rendering it incurable by the Court's instructions.

In his Motion, Defendant also argues that the prejudice from Officer Livingston and Mr. Williams' testimony was exacerbated by the Government's counsel's statement during closing arguments that Defendant is a "drug dealer." (Doc. 109, p. 3.) The Eleventh Circuit has held:

> We will reverse a defendant's conviction based on a prosecutor's statements when they are: (1) improper; and (2) prejudice the defendant. Improper statements prejudice the defendant when there is "a reasonable probability that, but for the prosecutor's offending remarks, the outcome of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Thus, we examine whether any of the prosecutor's statements were improper, and then review their prejudicial effect in the aggregate.

United States v. Baker, 432 F.3d 1189, 1252 (11th Cir. 2005) (quoting United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991)) (internal alterations, and citations omitted), abrogated on other grounds by Davis v. Washington, 547 U.S. 813 (2006). The Government's counsel did indeed

refer to Defendant as a "drug dealer" on multiple occasions during his closing argument.  (Doc.

124, pp. 22, 29, 41.)  However, it was not improper for counsel to do so.[5]  The term "drug dealer"

is often used, not only colloquially but also by judges and lawyers, to describe someone who

unlawfully distributes controlled substances.   Indeed, the United States Supreme Court and the

Eleventh Circuit have frequently used the term to describe individuals involved in illegal drug

distribution.   See, e.g., Brumfield v. Cain, 576 U.S. 305, 327 (2015) (Thomas, J., dissenting)

(defendant "had been involved a few years earlier in the fatal shooting of a fellow drug dealer");

United States v. Colston, 4 F.4th 1179, 1183 (11th Cir. 2021) (defendant was "a small-time local

drug dealer"); Baker, 432 F.3d at 1201–38 (referring to individuals as "drug dealers" on at least

---

[5]  During the rebuttal portion of its closing argument, the Government's counsel offered a mix of metaphors that posited that a community is like a "vehicle" and that its people are the "engine" of that "vehicle," and he spoke about the "community's destination."  (Doc. 124, pp. 40–41.)  Counsel also appeared to compare communities to tires and posited,

> [c]ommunities that are permeated by drug dealers and methamphetamine are soon worn bald.  The fabric is broken away, and they're on the verge of a blowout.  Businesses move, and children can't even play outside.  You're left with, in those type of communities, self-serving drug dealers who are more concerned about profit than they are about the potholes of poison that they pump in the veins of the neighborhood.

(Id. at p. 41.)  Defendant's counsel objected and, at sidebar, argued that the Government's attempt to "extrapolate and talk about multiple drug dealers in the communities and how it's affecting everyone [is] inappropriate."  (Id.)  The Court sustained the objection and directed counsel to "stick to the evidence, the indictment, and the charges [of this case]."  (Id. at p. 42.)  However, the Court found that there was no curative action needed because the argument "wasn't in any way prejudicial to that extent."  (Id.)  In his Motion for New Trial, Defendant does not challenge the Government's rebuttal argument in general but instead only points to Government's counsel references to defendant as a drug dealer.  (See doc. 109.) However, even if he were challenging the overarching metaphor, that argument would be unavailing.  First, it is not clear that counsel's statements were wholly improper, as "[a]ppeals to the jury to act as the conscience of the community, unless designed to inflame the jury, are not per se impermissible."  United States v. Kopituk, 690 F.2d 1289, 1342–43 (11th Cir. 1982); see also United States v. Weaver, 760 F. App'x 745, 751 (11th Cir. 2019).  Moreover, even if the Government's counsel's rebuttal argument was improper, it was not highly prejudicial and did not affect Defendant's substantial rights.  Given the significant evidence against Defendant, the Court's direction to Government's counsel that he move on from the objected-to line of argument, and the Court's instructions to the jury that the statements of the lawyers are not evidence, there is no reasonable probability that counsel's arguments during rebuttal affected the outcome of Defendant's trial.

eleven occasions).  In this case, the Government charged Defendant with dealing drugs on three occasions, and, as such, it was required to convince the jury beyond a reasonable doubt that Defendant dealt drugs.  Further, during trial, the Government introduced evidence that Defendant indeed dealt drugs on three occasions.  Thus, there was nothing improper about Government's counsel contending that Defendant was a "drug dealer" during closing argument.

Even if referring to Defendant as a "drug dealer" was improper, that impropriety did not unduly prejudice Defendant.  As an initial matter, the Court repeatedly instructed the jury that the statements of the attorneys were not evidence or instructions on the law.  (Doc. 123, p. 16; doc. 124, pp. 21, 45.)  See Weaver, 760 F. App'x at 752 (trial court's repeated instructions to jury that statements of lawyers were not evidence and were not instructions on the law "cured any prejudice" caused by counsel's argument).  Moreover, as pointed out previously, the Government presented substantial evidence that Defendant distributed methamphetamine on the three occasions alleged in the Indictment.  Thus, when reviewing the prejudice that could have flowed from Government's counsel's statements in the aggregate, there is no reasonable probability that the statements affected the outcome of Defendant's trial.

## CONCLUSION

For all the reasons stated above, the Court **DENIES** Defendant's Motion for a New Trial, (doc. 109).

**SO ORDERED**, this 10th day of January, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA